UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-83 |
| | ) | |
| RICKY ANTHONY LANIER, | ) | |
| KATRINA RESHINA LANIER, | ) | |
| LATOYA MONTREVETTE SPEIGHT, and | ) | |
| EMANUEL LOUIS HILL | ) | |

**REPORT AND RECOMMENDATION**

The defendant Ricky Lanier has filed a motion to dismiss the indictment, doc. 90. This motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. Although the motion was not timely filed, the court will nevertheless will consider it on its merits.

Defendant and his co-defendants are charged in count 1 with conspiring to commit wire fraud; in counts 2 through 18 with wire fraud; and in count 19, with Major Fraud against the United States.

To over-simplify the charges somewhat, the indictment essentially alleges that defendant defrauded several government agencies by making false statements to the Small Business Administration and to the Department of Veterans' Affairs, using interstate wire communications to do so, in order to obtain government contracts for companies which were not lawfully entitled to be awarded those contracts because of defendant's relationship with the companies.

Congress has mandated that a certain percentage of government contracts should be awarded preferentially to certain small businesses which have been congressionally determined to be at a competitive disadvantage when compared to other businesses doing the same type of work. Under the Small Business Administration's 8(a) Business Development program, small businesses that are considered to be socially and economically disadvantaged under federal law and regulations may apply to the SBA for admission to the program. Once admitted to the 8(a)-BD program, firms can participate for up to nine (9) years by obtaining business development assistance, including preferences on the award of federal contracts.

To be eligible to participate in the 8(a)-BD program, a business must satisfy a number of requirements, including: being at least 51% unconditionally owned and controlled by one or more socially and economically disadvantaged individuals[1]; those individuals must be of good character and citizens of the United States; and the business must meet certain size criteria. The business can participate in the program for nine years.

As relevant to this indictment, an individual who is "socially and economically disadvantaged" can use that status *on only one occasion* for admission to the 8(a)-BD program. Once an individual has used that status to enable a company to participate in the 8(a)-BD program, he may not thereafter be considered a disadvantaged owner or controller of another 8(a)-BD company.[2]

---

[1] 13 C.F.R. § 124.105, 106.

[2] 13 C.F.R. § 124.108(b).

Congress has established a similar preferential program for military veterans who have a service-related disability. That program also has requirements for admission: the service-disabled veteran must have a service-connected disability; the veteran must unconditionally own 51% of the business; the veteran must control the management and daily operations of the business; and the service-disabled veteran must hold the highest officer position in the business.

The indictment asserts that this defendant and his co-defendants owned a construction company in Kinston, North Carolina, known as Global Construction, Inc., and that Global Construction participated in the SBA 8(a)-BD program from 1998 to 2007, during which time Global Construction was awarded over $23 million in federal contracts through the 8(a)-BD program. After Global Construction completed its nine (9) year participation in the program, this defendant was no longer eligible to participate in the 8(a)-BD program. Although perhaps this paraphrase is another over-simplification, the indictment essentially alleges that this defendant used Kylee Construction Company and JMR Investments as a "front" to enable defendant to continue his participation in the 8(a)-BD program when he was no longer legally entitled to do so. The indictment charges that defendant made numerous false representations to the SBA and to the VA to execute his fraudulent scheme, one of the most critical being the concealment that defendant and three co-defendants actually controlled the two companies.

Defendant's arguments are a bit hard to follow. In one instance, he seems to assert that the SBA and the VA should have detected defendant's false representations and

promptly terminated Kylee Construction and JMR Investments' participation in the 8(a)-BD program and, because they did not, the government cannot now charge defendant with fraud. So far as this magistrate judge knows, there is no statute or case that requires that a victim of fraud must first detect the fraud and take remedial action before there may be a criminal prosecution for that fraud.

Defendant argues that both Kylee Construction Company and JMR Investments were qualified to participate in the 8(a)-BD program before he became involved with either company, and that his subsequent involvement with these companies did not thereafter disqualify them from such participation. That may or may not be accurate, but that of course is the issue to be determined by the jury after hearing all the evidence. A motion to dismiss the indictment is not a vehicle by which to test the sufficiency of the government's evidence; *see, e.g., U.S. v. King*, 581 F.2d, 800, 802 (10th Cir. 1978). The factual allegations in the indictment are assumed to be true as far as determining its legal sufficiency is concerned, *U.S. v. Sampson*, 371, US 75, 78-79 (1962). An indictment is sufficient if it (1) sets forth all elements of the offense and informs the defendant of the charges so that he can prepare a defense, and (2) is specific enough that the defendant can plead double jeopardy if he is later charged with the same crime based on the same facts. *United States v. Blandford*, 33 F.3d 685, 705 (6th Cir. 1994).

Defendant argues that he was merely an employee of, or consultant to, Kylee Construction Company and JMR Investments. In other words, he says that he neither owned nor controlled these companies. Once again, defendant is asking that this court now decide

a contested factual issue, *viz*, who actually owned or controlled Kylee Construction and JMR Investments. As already pointed out, this the court cannot do at this stage of the case.

The indictment also alleges the defendant made other misrepresentations to the SBA and the VA. One of those misrepresentations concerned the amount of work actually performed by employees of Kylee Construction Company and JMR Investments. 13 C.F.R. § 125.6 requires that at least 15% of the contracted work be performed by employees of the participating firm, and the indictment alleges that defendant so represented to the SBA and the VA. However, so the indictment asserts, defendant caused Kylee Construction Company and JMR Investments to sub-contract out to other companies almost all the work on the government contracts.

Defendant argues that the wire fraud statute protects only property rights, and "accurate information" is not a property right, citing *inter alia*, *Sadler v. U.S.*, 750 F.3d 585 (6th Cir. 2014). In other words, defendant says it was no crime to use e-mail and fax machines to communicate false information from one state into another.

Defendant's premise - that the government was deprived only of "accurate information" which is not a property right- is unsound. The *inaccurate* information caused Kylee Construction Company and JMR Investments to be awarded lucrative government contracts to which they were not entitled. In a real sense, defendant facilitated the theft of government money by fraudulently appropriating to himself, through Kylee Construction and JMR Investments, contract rights that rightly should have gone to other (qualified) individuals and firms. *See, e.g., U.S. v. Tulio*, 263 Fed. Appx. 258 (3rd Cir. 2008); *U.S. v.*

*Azteca Supply Co.*, 2010 W.L. 3940717 (NDIL, 2010). Nor is it of any significance that Kylee Construction Company and JMR Investments may have performed their work under the government contracts fully and in a workmanlike manner. The issue is not the quality of the work performed by Kylee Constructions and JMR Investments, but rather how Kylee Construction and JMR Investments acquired the contracts to do that work. *See, U.S. v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009).

The *Sadler* case relied upon by defendant is distinguishable. Sadler, the defendant, who operated a "pill mill," used false names and submitted false information to the drug companies from which she purchased the pills. The Sixth Circuit held that the drug companies were not deprived of any "property" and dismissed the wire fraud charge against her. But in the case before this court, the indictment charges defendant with concealing from SBA and the VA his true relationship to Kylee Construction and JMR Investments and, based on that concealment, these two companies were admitted to the 8(a)-BD program. If proven to be true, the government paid a lot of money to firms not legally entitled thereto. In the same vein, Kylee Constructions and JMR Investments obtained the benefit of government contracts which would have gone to other firms but for defendant's fraud.

If the facts described in the indictment are true, defendant conspired to commit wire fraud; committed wire fraud; and defrauded the United States of America. It is respectfully

recommended that defendant's motion to dismiss, (Doc. 90) be denied.[3]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

[3]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).